HORATIO D. COE v. JOHN L. FARWELL, *et al.*

1. IRREGULAR TAX SALE; *Recovery under § 142 of Tax Law; Unavailing Order of Commissioners.* A tract of land belonging to plaintiff was duly and legally assessed for taxes for the year 1870, and, the taxes remaining unpaid, was sold to the county. The taxes of 1871 were charged up to this sale. The taxes of 1872 being delinquent, the land was advertised and sold for the taxes of that year alone to one C., who received a sale certificate in the usual form. The subsequent taxes for 1873, 1874 and 1875 were paid by the holder of this sale certificate, the assignee of C., the defendant herein. In 1876, a tax deed was issued in statutory form, and *prima facie* valid. Defendant also paid the taxes of 1876, 1877 and 1878. In 1878, plaintiff redeemed the land from the sale to the county for the taxes of 1870 and 1871, and also procured from the county commissioners an order declaring the tax deed to defendant invalid, and tendering back the taxes and ten per cent. interest upon execution by him of a quitclaim deed to plaintiff. Defendant paying no attention to the order, this action of ejectment was commenced. *Held,* That notwithstanding the irregularity of the sale to C., defendant was entitled, under § 142 of the tax law of 1876, to the taxes paid by him, and tax-interest, before dispossession. *Held, further,* That the order of the commissioners had no effect upon the rights of plaintiff and defendant as between themselves, and that the section under which this order was obtained was one designed for the benefit of the county and the tax purchaser, rather than for the benefit of the land-owner.

2. TENDER OF TAXES; *Ejectment.* A tender of taxes and interest is not an essential prerequisite to an action of ejectment against one holding under a defective tax deed.

### *Error from Coffey District Court.*

EJECTMENT, brought by *Horatio D. Coe,* an infant, by James M. Hendry, his guardian, against *Farwell* and three others, to recover the possession of the southeast quarter of section 22, township 21, range 15, situate in Coffey county. Trial by the court at the June Term, 1879, upon the pleadings and an agreed statement of facts. Recovery of the premises was adjudged to the plaintiff, with his costs ; but it was further adjudged that —

"Before said plaintiff be let into the possession of said land, he pay to said defendant, John L. Farwell, the said taxes paid by him on said land under the tax deed and subsequent

thereto, as follows, to wit: the consideration of said tax deed, $761.97, with interest thereon from the date thereof, July 17, 1876, until paid, at the rate of 20 per cent. per annum; and the further sum of $79.50, taxes thereon of 1876, paid by him December 5, 1876, with interest thereon until paid, at the rate of 25 per cent. per annum; and the further sum of $79.60, taxes thereon of 1877, paid by him December 20, 1877, with interest thereon until paid, at the rate of 25 per cent. per annum; and the further sum of $119.54, taxes thereon of 1878, paid by him December 21, 1878, with interest thereon until paid, at the rate of 25 per cent. per annum. And hereof let execution issue for possession of said premises, only upon payment of said sums of money."

New trial denied, and *Coe* brings the case to this court. The opinion states the facts.

*Owen A. Bassett,* and *A. M. F. Randolph,* for plaintiff in error.

*Gillett & Forde,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of ejectment, in which the defendant claimed under a tax deed, and the only question is, whether he was entitled to recover the taxes paid by him, and interest, before being dispossessed of the land. The case was tried by the court, without a jury, and the claim of defendant for taxes sustained.

From the agreed statement of facts, it appears that—

"The land in controversy was subject to taxation for the year 1870, and the taxes legally assessed thereon remained due and unpaid on the first Tuesday of May, 1871, and the same was by the county treasurer, . . . duly and legally bid off for the county of Coffey . . .; that said land remained unredeemed from said sale until January 2, 1878, at which time the plaintiff in this action redeemed the land from said sale; that the tax thereon for the year 1871 was legally carried to said sale to Coffey county by the treasurer of said county, and was included in the redemption made by plaintiff on January 2, 1878, · . . . and no subsequent taxes were included in said redemption; that the land in

dispute was duly and legally assessed for the year 1872, and the taxes thereon for said year remained due and unpaid on the first Tuesday of May, 1873, at which time . . . the treasurer of said county sold the same to Austin Corbin for the delinquent taxes and charges thereon, amounting to the sum of $111.13 for the year 1872; that on the 13th day of July, 1873, the said Corbin duly assigned the tax-sale certificate, issued to him by the county treasurer, . . . upon said sale, to John L. Farwell, one of the defendants in this action; that on the 17th day of July, 1876, the county clerk of Coffey county, . . . executed and delivered to the said John L. Farwell a tax deed; that the said Farwell paid the subsequent taxes on said property up to and including the taxes of 1878; that some of these taxes were included in the deed, and the others paid subsequently were simply upon receipts; and that upon January 10, 1878, at the instance of the plaintiff, the county commissioners of Coffey county made an order under § 146 of the tax law, declaring the sale and deed invalid, and directing the return of the taxes and ten per cent. interest to the holder of the deed upon delivery of a quitclaim deed to the plaintiff. The defendant, however, never accepted the benefits of this order, nor executed the quitclaim."

Plaintiff in error has filed an elaborate argument, challenging the ruling of the district court which sustained defendant's claim for taxes. Notwithstanding this, it must be held that the decision comes within the plain letter of the statute, and is sanctioned by repeated rulings of this court. Defendant had paid the taxes into the county treasury; he had purchased the land at a regular tax sale; he had received a deed executed in substantial compliance with the statutory form, one *prima facie* valid, and which in time would ripen into a perfect title beyond the reach of challenge. The land was subject to taxation, and the owner had not paid the taxes. True, the sale could not be upheld, because not made in conformity to the statute. The title, challenged when it was, failed. But the defect was not as vital as that disclosed in *Smith v. Smith*, 15 Kas. 290. There, the power to assign the sale certificate did not exist. No one could make a valid transfer. The deed was void upon its face, and never started

the statute of limitations to run. Yet it was held that § 142 of the tax law applied, and that the holder of the tax deed, even though it were void upon its face, could not be dispossessed until reimbursed his taxes and interest. See also *Challiss v. Hekelnkœmper*, 14 Kas. 474; *Millbank v. Ostertag*, ante, p. 462.

It is urged that if such a sale can be upheld, the county might be wronged by the loss of the taxes for the prior years. But the sale is not upheld. The county may repudiate it, and return the money it has received. But even a county may, if it sleep upon its rights too long, lose them. If, notwithstanding the prior taxes, it makes a sale, receives pay and then issues a deed *prima facie* valid, the statute of limitations may uphold that deed to the loss of all prior taxes. But be that as it may, the rights of the county are not here in question. The land-owner who has never paid these taxes is challenging the possession of one who has paid them—who for years has been discharging his obligations to the public. To encourage just such acts, not for the sake of punishing the land-owner, but to enforce a prompt payment of public dues, the statutes guarantee either title, or failing that, a large bonus to him who will voluntarily assume and discharge delinquent obligations to the county.

Again, it is urged that because the commissioners have declared the sale and deed invalid, and tendered back the taxes and ten per cent. interest, the purchaser is bound to accept this, and can no longer claim under said § 142. Such is not the purpose or scope of the statute under which this action of the commissioners was had. It is for the benefit of the county and the tax purchaser, rather than the land-owner. If it were as potent as is claimed, it would practically nullify § 142, for the ascertainment of the invalidity of the tax deed is not left exclusively to the commissioners, but the section in terms provides for the action of the commissioners whenever "it shall be discovered or adjudged that the sale was invalid." Land-owners would invariably proceed under this

section, asking the commissioners to clear off the taxes by payment out of the county fund, and then by a relevy, attempt to collect them off from the land. As the section provides for payment of ten per cent. interest, and as the relevy could only be for the original taxes, such proceedings, postponing for years the payment of taxes without cost or interest, would be very profitable to the land-owner, but ruinous to the public. The section manifestly adjusts rights between the county and the tax purchaser. Often it furnishes the only remedy to the latter. If the land was not subject to taxation, or if the taxes had in fact been paid, it may well be that the tax purchaser is not only without any rights or claim against the land-owner, but without any remedy against any party save as given by this section. So also in a case like the present, where the county, while holding for the taxes of one year, has sold for the taxes of a subsequent year, for its own protection it may under this section set aside the sale upon return of the taxes and ten per cent. interest.

One other question remains. It is claimed by defendant in error that as no tender was made of taxes and interest before the commencement of the action, it was prematurely brought, and *Hoffmire v. Rice*, 22 Kas. 749, is cited. This is a mistake. If the tax title failed, the original owner would recover possession without any payment of taxes but for the provisions of the statute. They guarantee possession until payment. But the statute plainly contemplates an adjudication as to the validity of the tax title before any order is made as to taxes (§ 142), and that provision was recognized in the case cited.

There being no other question in the case, the judgment will be affirmed.

All the Justices concurring.